Barbara E. HIZNAY and Andrew J. Hiznay, Plaintiffs,

v.

Theodore B. STRANGE, M. D., Defendant.

Superior Court of Delaware, New Castle County.

Submitted Jan. 18, 1980.
Decided April 29, 1980.

Bayard Marin, Wilmington, for plaintiffs.

Mary Pat Trostle of Biggs & Battaglia, Wilmington, for defendant.

LONGOBARDI, Judge.

In this medical malpractice action Defendant has moved for summary judgment on the basis that the action is barred by the applicable statute of limitations, 18 *Del.C.* 6856.[1] Following oral argument, the Court issued an opinion on February 20, 1980 allowing Plaintiffs twenty days to: (1) supplement the factual record concerning the date or dates on which the alleged malpractice occurred, and (2) amend their complaint to clearly raise the fraudulent concealment doctrine. Pending a response from Plaintiffs' counsel, the Court held Defendant's motion in abeyance. More than fifty days have passed since the Court's prior opinion was filed and no response has been filed by Plaintiffs. Consequently, the Court will proceed to decide the motion on the basis of the present record.

Read in a light most favorable to Plaintiffs, the non-moving parties, *Bailey v. Pennington*, Del.Supr., 406 A.2d 44 (1979), the record fairly establishes the following facts:

On or about February 5, 1975, Plaintiff Barbara Hiznay (hereinafter referred to as "Plaintiff") fell and broke her ankle. Defendant first examined Plaintiff shortly thereafter and advised her that surgery would be necessary. The corrective surgery was performed by Defendant on February 10, 1975. Thereafter, Defendant continued to treat Plaintiff for her ankle up to June 30, 1975 at which time she was apparently discharged as a postsurgical patient. The complaint simply alleges:

> Defendant Strange was negligent in that he did not properly operate on plaintiff's ankle and failed throughout the postsurgical treatment to appreciate the problems experienced by plaintiff Barbara Hiznay.

Complaint, para. 6.

The "problems" to which reference is made included drainage from the incisional area, pain, occasional swelling and difficulty in holding her foot in a flat position. These problems initially occurred during the post-

---

1. 18 *Del.C.* 6856 provides in pertinent part:

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:

(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter; . . . .

surgical treatment period and continued for some time after Plaintiff ceased to be Defendant's patient. In August, 1975, Plaintiff returned to her full-time job as a barmaid but after one or two weeks she found the pain in her ankle to be too great. Consequently, Plaintiff arranged to change from full-time to part-time work. Plaintiff continued to experience problems with her ankle and foot for almost two years and in June, 1977, she consulted another physician, Dr. D'Alonzo. At that time Dr. D'Alonzo diagnosed the problem as equinus contracture with associated degenerative or traumatic arthritis of the ankle. The instant complaint was filed on December 7, 1977, two years and nine months after the surgery was performed by Defendant and two years and five months after Defendant had stopped treating Plaintiff.

The parties agree that § 6856 controls this case. However, Defendant argues that the general two year limitation period applies while Plaintiffs understandably contend that the injury was "inherently unknowable" and therefore covered by the three year limitation period provided in § 6856(1).[2] The Supreme Court has recently held that this provision simply codifies the "inherently unknowable injury" rule of *Layton v. Allen*, Del.Supr., 246 A.2d 794 (1968), and limits it to three years. *Dunn v. St. Francis Hosp., Inc.*, Del.Supr., 401 A.2d 77 (1979). Therefore, the Court will turn to the *Layton* line of cases for guidance in determining whether Plaintiff's injury can properly be characterized as "inherently unknowable."

■ The precise rule of *Layton v. Allen*, above, which has now been codified in § 6856(1) may be stated thusly:

[W]hen an inherently unknowable injury has been suffered by one who is blamelessly ignorant of the act (and the injury) and the harmful effect thereof develops gradually over a period of time, the injury is sustained when the harmful effect first manifests itself and becomes physically ascertainable.

*Collins v. Wilmington Medical Center, Inc.*, Del.Supr., 319 A.2d 107, 108 (1974). The *Layton* rule dealt with unknowable conditions in a *physical* sense, *see Pearson v. Boines*, Del.Super., 367 A.2d 653 (1976), *aff'd*, Del.Supr., 386 A.2d 651 (1978), and operated to toll the statute of limitations until such time as the plaintiff's injury became *physically manifest*. Given this definition of an "inherently unknowable injury," this Court construes the statute to mean that if the Plaintiff's injury becomes physically manifest within two years of the date on which the injury occurred, then § 6856(1) is inapplicable and the general two year limitation period controls.

■ Applying this statutory *Layton v. Allen* rule to the case *sub judice*, the Court finds that Plaintiff's injury was not inherently unknowable within the two years following its occurrence and, therefore, the general two year limitation period applies. Undisputed facts in the record conclusively established that Plaintiff first experienced physical symptoms as a result of the allegedly negligent surgery shortly after February 10, 1975. These physical problems continued throughout the period in which Defendant treated Plaintiff postsurgically and up until June, 1977, at least. Consequently, since the two year limitation period applies and this action was not filed within such period, Plaintiffs' claim is time-barred unless the Court finds some other basis upon which the statute may have been tolled.

■ This brings the Court to consideration of the fraudulent concealment doctrine as a basis for tolling the statute of limitations in this case. Under this doc-

---

**2.** The § 6856 limitation period "runs from the time when the wrongful act occurred. . . ." *Dunn v. St. Francis Hosp., Inc.*, Del.Supr., 401 A.2d 77, 81 (1979). Regardless of whether the wrongful act in the present case was Defendant's alleged negligence in performing the February 10, 1975 surgery or his alleged negligence during the postsurgical treatment period ending June 30, 1975, Plaintiffs' claim is time-barred if the two year limitation period applies since both of the critical dates are more than two years prior to the filing of the instant complaint.

**492**

trine, if a defendant fraudulently conceals the existence of a cause of action from the injured party, the limitation period will not begin to run until such time as the injured party discovers or should have discovered his rights against the defendant. *Halpern v. Barran*, Del.Ch., 313 A.2d 139, 143 (1973). Under *Superior Court Civil Rule* 9(b), a plaintiff who relies upon this doctrine is required to plead with particularity the factual circumstances constituting fraud. *Id.* In the medical malpractice context, "[t]he doctrine of fraudulent concealment requires both knowledge and affirmative action on the part of the physician." *Tilden v. Anstreicher*, Del.Supr., 367 A.2d 632, 634–35 (1976).

The complaint herein simply alleges that at the time Plaintiff was released from Defendant's care, Defendant advised her that she had attained maximum recovery and that her continuing discomfort and disability were to be expected by reason of the nature of the original injury. This allegation is insufficient under *Rule* 9(b) standards to raise the issue of fraudulent concealment. Again in the reply brief on this motion and Plaintiff's affidavit attached thereto, the allegation is made that Plaintiff was led by Defendant to believe that her discomfort was a natural result of her injury. Assuming that Defendant did negligently perform the ankle surgery, there is no pleading in the record which alleges Defendant knew of this negligence and acted affirmatively to conceal it from Plaintiffs. In fact, it was not until oral argument that Plaintiffs' counsel first clearly indicated to the Court and opposing counsel that Plaintiffs intended to rely upon the doctrine of fraudulent concealment. Rather than summarily foreclose Plaintiffs from such reliance, the Court determined in the interest of justice that Plaintiffs should be granted an opportunity to amend their complaint to raise the claim of fraudulent concealment with sufficient particularity to satisfy *Rule* 9(b). In its February 20, 1980 opinion, the Court granted Plaintiffs' counsel twenty days in which to file such amendment; "otherwise, the Court will deem this claim to have been abandoned." February 20, 1980 opinion at 2.

The twenty days allowed have long since passed and no amendment to the complaint has been filed. Therefore, the Court holds that Plaintiffs have abandoned their claim of fraudulent concealment. Alternatively, the Court finds no factual support in the present record to hold that Defendant had the requisite actual knowledge of the alleged malpractice or had acted affirmatively to conceal such malpractice from Plaintiffs.

The factual situation herein not fitting within the "inherently unknowable injury" mold and no other theory being adequately advanced upon which the statute may be tolled, the Court must conclude that the statute of limitations has run. Defendant's motion for summary judgment is, therefore, granted.

IT IS SO ORDERED.