**In re ASBESTOS LITIGATION WEST TRIAL GROUP,**

**Limited to: Helen West, individually and as personal representative of Donald West, deceased.**

Superior Court of Delaware, New Castle County.

Submitted July 15, 1992.
Decided Aug. 11, 1992.

---

**3.** Thus, this Court does not reach the issues raised where such a provision exists in a non-

commercial user setting.

Robert Jacobs, Jacobs & Crumplar, P.A., Wilmington, for plaintiff.

Julius Komissaroff, Komissaroff and Perry, Wilmington, for defendant Manning Paper Co.

## OPINION

GEBELEIN, Judge.

Defendant Manning Paper Company has taken exception to the Asbestos Master's Final Report dated May 4, 1992 denying Manning's motion for summary judgment against plaintiff Helen West on the basis of the applicable statute of limitations.

Plaintiff filed this wrongful death action on September 18, 1989 alleging that her husband, Donald West, died as a proximate result of exposure to asbestos products during his employment between 1945 and 1983. Mr. West died on December 23, 1987. Plaintiff's original complaint named approximately 35 defendants as being responsible for her husband's asbestos-related disease and death. Defendant Manning Paper Company was not named as a defendant at that time. This complaint was filed within two years of the date of her husband's death.

On May 25, 1990, more than two years after the date of death of Mr. West, plaintiff moved to amend her complaint to include two additional defendants, American Insulated Wire Corporation and Manning. The Court granted the motion subject to the defendant's right to assert a statute of limitations defense. Plaintiff's amended complaint was filed June 12, 1990.

■ Manning filed a motion for summary judgment, contending that plaintiff's suit as to Manning was barred by the applicable statute of limitations, 10 *Del.C.* § 8119. The statute requires that a personal injury action be brought within two years of the date of injury. *Bendix Corp. v. Stagg,* Del.Supr., 486 A.2d 1150 (1984), *aff'g Stagg v. Bendix Corp.,* Del.Super., 472 A.2d 40 (1984); *Layton v. Allen,* Del.

Supr., 246 A.2d 794 (1968). In the case of an inherently unknowable injury, the two year period begins to run when the plaintiff discovers or should discover the injury. The plaintiff is chargeable with knowledge when he or she is put on notice of the existence of a potential cause of action. The plaintiff attempting to use this "discovery rule" to avoid a statute of limitations must show not only that he or she was ignorant of the cause but also that he or she acted reasonably and promptly in seeking a diagnosis and in pursuing the cause of action. *Layton, supra; Bendix, supra.*

■ The Court finds it appropriate that the discovery rule should apply to wrongful death claims as it does to personal injury actions. Therefore, a cause of action for wrongful death accrues when a qualifying survivor is chargeable with knowledge of a potential cause of action, i.e., when the survivor does or should become aware of the cause of the decedent's death which gives rise to liability for wrongful death.

The standard of review for master's decisions on case-dispositive motions such as the summary judgment motion filed by Manning is *de novo. In re Asbestos Litigation,* Del.Super., C.A. No. 77C–ASB–2, Gebelein, J. (August 7, 1992). Therefore the Court must review the record anew to determine when plaintiff is chargeable with knowledge sufficient to pursue her cause of action. If the uncontroverted record shows that plaintiff "discovered" her injury (the death of her husband allegedly due to exposure to Manning's asbestos products) more than two years prior to amending her complaint to include Manning, Manning is entitled to summary judgment.

On March 22, 1977, Mr. West was contacted by a former employer, United Engineers & Constructors, Inc., which advised him that he had been exposed to asbestos products and authorized him to consult a physician for a chest X-ray and pulmonary function test. Mr. West did obtain the suggested tests. The physician, Dr. Mast, found evidence of significant respiratory disease and reported that diagnosis on a form sent to Mr. West's former employer. Mr. West was informed that the medical report form would be supplied to him on request. It is not known whether Mr. West was directly informed of the physician's diagnosis or ever in fact requested a copy of the form.

Ten years later, on September 14, 1987, Mr. West went to the emergency room for treatment of a productive cough and chest pain. A chest X-ray was taken, and the findings were stated to be consistent with chronic lung disease. Mr. West apparently informed the emergency room personnel of his asbestos exposure, since the treatment record states "worked in asbestos X 2 yrs." As a second diagnosis, the emergency room report listed "probable asbestosis." Mr. West signed this form.

On September 16, 1987, Mr. West was admitted to the hospital with an admitting diagnosis of acute pulmonary insufficiency and pulmonary fibrosis. Mr. West remained at the hospital for ten days. On October 2, 1987, Mr. West returned to the hospital emergency room because his condition had worsened. The emergency room report listed asbestosis as the diagnosis. Mr. West was admitted to the hospital where he remained until October 9, 1987.

Mr. West was again admitted to the hospital for treatment of respiratory problems from October 13–26, 1987 and October 30–November 13, 1987. Mr. West was again admitted to the hospital on November 17, 1987. A lung biopsy was performed on December 14, 1987, which revealed multilobar carcinoma of the lung. Mr. West remained in the hospital until his death December 23, 1987.

Plaintiff Mrs. West was deposed during the course of discovery in this action. Mrs. West recalled the time in 1977 when Mr. West received a letter from United Engineers advising him of his asbestos exposure and advising him to seek medical advice. She stated that Mr. West went back to the physician several months later to find out about the "repercussions" of his asbestos exposure, but she did not go with him and does not know what was said.

Mrs. West admitted that as early as October 1987, she was told that her husband was possibly suffering from asbestosis.

(Plaintiff's deposition, February 6, 1992, p. 41). Before the results of the lung biopsy were returned, she was told by one of her husband's treating physicians, Dr. Hamilton, that he suspected lung cancer and that he was "quite sure" it was related to asbestosis. On the day following her husband's death, she was told by his doctor that he believed that Mr. West's lung cancer was caused by asbestos exposure. Even before her husband's death, on December 16 or 17, 1987, Mrs. West consulted an attorney regarding her options if her husband's death was asbestos-related. That attorney recommended the firm which is currently serving as plaintiff's counsel as a firm which specializes in asbestos cases. In January or early February of 1988, Mrs. West retained the firm.

Mrs. West executed consent forms for the release of her husband's medical records and various medical records were sought. In June of 1988, the medical records were sent to a New Jersey physician whom plaintiff's counsel retained to review potential asbestos-related death cases. In the fall of 1988, plaintiff's counsel decided to retain another expert. The records were forwarded to Dr. Groth of Ohio in January of 1989. Dr. Groth sent his report to plaintiff's counsel in June 1989. The facts are in dispute as to when Mrs. West was formally told that it had been confirmed by a medical expert that her husband's cancer was related to asbestos. In her deposition, she referred to a January 1988 pathology report from which she obtained this information. However, in an errata sheet attached to the deposition transcript and in argument to the Court, plaintiff has stated that she intended to refer to her 1989 receipt of Dr. Groth's report. For the reasons set forth below, this factual dispute is not material.

Plaintiff contends that she is not chargeable with knowledge that her husband's death was related to his asbestos exposure until June of 1989, when she received Dr. Groth's report confirming that her husband's lung cancer was due to asbestos exposure. The Court finds that, to the contrary, the factual record even when viewed in the light most favorable to the plaintiff demonstrates that she was aware of the potential existence of her cause of action as early as December of 1987.

Plaintiff testified at her deposition that during her husband's illness, she suspected that his illness was related to asbestos and that her husband's physicians were "quite sure" of this as well. Plaintiff acted promptly after her husband's death and in January 1988 retained a law firm specializing in asbestos-related claims. Under the discovery rule, the statute of limitations does not begin to run until the plaintiff is chargeable with knowledge of the cause of her injury. However, there is no requirement that the plaintiff be absolutely certain or that she have her suspicions confirmed by experts' reports. There is no additional time in the statutory scheme allotted for the investigation and confirmation of the plaintiff's knowledge and beliefs or the retention of experts. Therefore it is immaterial that plaintiff did not receive the expert's report until June of 1989, or that the statute of limitations would have run on her claim before the earliest possible date on which she could have received such a report.

The undisputed facts before the Court show that plaintiff was sufficiently aware of the alleged cause of her husband's death in December of 1987 to discuss asbestosis with his treating physicians and to retain counsel specializing in asbestos cases. The Court finds that plaintiff was chargeable with knowledge of her claim in December of 1987 and January 1988. Plaintiff's original complaint was filed within two years and is not affected. Since the amended complaint which names Manning Paper Company as a defendant was filed more than two years after that time period, Manning is entitled to summary judgment as a matter of law.

The Master's Final Report dated May 4, 1992 is VACATED and defendant Manning Paper Company's motion for summary judgment is GRANTED.